IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN O. GREENBERG IMMIGRATION JUSTICE CLINIC AT THE BENJAMIN N. CARDOZO SCHOOL OF LAW and ENVISION FREEDOM FUND, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT and U.S. DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. | Civil Action No. 22-cv-2885 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Plaintiffs Kathryn O. Greenberg Immigration Clinic at the Benjamin N. Cardozo School of Law ("Clinic") and Envision Freedom Fund (formerly Brooklyn Community Bail Fund) ("EFF") (collectively, "Plaintiffs"), bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522 *et seq*., to compel Defendants U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Department of Homeland Security ("DHS") (collectively, "Defendants") to respond to Plaintiffs' FOIA request for records prepared, received, transmitted, collected, and/or maintained by ICE generated on or after October 1, 2015, regarding policies, guidelines, or procedures relating to immigration bonds.

2. Every year, Defendants release tens of thousands of detained noncitizens subject to immigration bonds paid as collateral by third-party *obligors* pending the noncitizens' removal proceedings. While immigration laws require a minimum bond of $1,500, in each of the last fourteen years, the median bond amount was at least $5,000, meaning half of all individuals who

posted bond actually paid $5,000 *or more*. In FY2016, FY2019, and FY2020 the median immigration bond reached $8,000, which means half of all individuals who posted bond paid $8,000 *or more*. As a result, Defendants collect hundreds of millions of dollars every year in immigration bonds.

3. Even after noncitizens have met all their obligations, requiring Defendants to *cancel* their bonds, a staggering amount of bond funds are never paid back. In fact, the U.S. Treasury account where Defendants deposit unclaimed bond funds totaled $237,658,766.27 as of December 31, 2021, dwarfing unclaimed money accounts held by *any* other federal agency.

4. Despite the magnitude of the bond immigration system, including the astronomically high numbers of canceled bonds that go uncollected, Defendants do not regularly provide updated information to the public regarding their practices and procedures relating to (1) cancelation or breach determinations, (2) notification to interested parties of such decisions, and (3) the return of immigration bond funds. Additionally, Defendants largely fail to make statistics and data related to their bond operations publicly available.

5. To shed light on ICE bond practices, Plaintiffs submitted a FOIA request to ICE on January 18, 2022. ICE has not responded to Plaintiffs' request as required by law.

6. The requested records are critical to inform the public of the procedures and policies regarding bonds in the immigration system. These records are also critical for Plaintiff EFF to manage its bond operations. Without such transparency and oversight, countless individuals are prevented from retrieving money that is crucial to their wellbeing.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B). Because this action arises under FOIA against an agency of the United States, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because the Clinic's principal place of business is in New York, New York.

9. This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. §§ 2201-2202, and Federal Rules of Civil Procedure 57 and 65.

10. Plaintiffs have exhausted their administrative remedies in connection with this FOIA request. 5 U.S.C. § 552(a)(6)(C)(i).

**PARTIES**

11. Plaintiff Clinic works with community-based and national advocacy organizations to improve immigration law and policy and to advance the quality of justice afforded to immigrants. The Clinic provides free legal representation to community-based immigrants' rights organizations in litigation and advocacy matters and to individual immigrants in deportation proceedings before federal immigration authorities.

12. Plaintiff EFF works alongside impacted communities to dismantle the oppressive and interconnected criminal legal and immigration systems. Founded in 2015 as the Brooklyn Community Bail Fund, EFF has been at the forefront of the fight to end money bail and pretrial detention. In 2018, in response to intensifying ICE raids and enforcement of immigration laws, EFF began paying immigration bonds. Since then, EFF has paid over $6.7 million to free more than 700 detained noncitizens.

13. Defendant DHS is a federal agency responsible for the enforcement of immigration in the United States. DHS is comprised of several subcomponents and offices, including ICE. DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1).

14. Defendant ICE is a subcomponent of DHS responsible for interior immigration enforcement, including immigration detention within the United States. ICE is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

### I. DEFENDANTS MAINTAIN AN EXTENSIVE, BUT OPAQUE BOND SYSTEM

15. After Defendants arrest a noncitizen while their removal proceedings are pending, Defendants have the authority to release that detained noncitizen on conditional parole or on bond of at least $1,500, unless that noncitizen is subject to mandatory detention. 8 U.S.C. §§ 1226(a)(2), 1226(c).

16. Every year, Defendants release tens of thousands of detained noncitizens on immigration bonds. *See Immigration Court Bond Hearings and Related Case Decisions*, SYRACUSE U. TRANSACTIONAL RECORDS ACCESS CLEARINGHOUSE (Feb. 2022), https://trac.syr.edu/phptools/immigration/bond/ [hereinafter "TRAC Bond Chart"]. In each of the last fourteen years, the median immigration bond was at least $5,000, meaning half of all individuals who posted bond paid $5,000 *or more*. *Id*. In FY2016, FY2019, and FY2020 the median immigration bond reached $8,000, which means half of all individuals who posted bond paid $8,000 or more. *Id.* Accordingly, Defendants collect hundreds of millions of dollars every year in immigration bonds.

17. Regulations and the bond contract establish basic parameters for the immigration bond process. Immigration bonds may be secured by cash or cash equivalent or by a surety

4

company authorized by the Department of Treasury to post bonds. 8 C.F.R. § 103.6(b)(1). These bonds are executed on Form I-352, Immigration Bond, *id.* § 103.6(a)(1), which enumerates the terms and conditions of the bond agreement, *see* U.S. IMMIGR. AND CUSTOMS ENF'T, Form I-352, Immigration Bond, https://www.ice.gov/doclib/forms/i352.pdf [hereinafter "Form I-352"]. Substantial performance of the conditions imposed by the bond releases the obligor—the person or entity posting bond—from liability, leading to the *cancelation* of the bond. 8 C.F.R. § 103.6(c)(3). ICE is required to notify obligors of breach or cancelation determinations on Forms I-323 or I-391, respectively. *Id.* § 103.6(e).

18. However, in addition to and separate from the regulatory requirements and the bond terms set forth in Form I-352, ICE officers must follow comprehensive *internal* written guidance setting procedures and standards around bond, including specific processes governing (1) breach and cancelation determinations, (2) notification of such determinations to interested parties, and (3) disbursement of funds. *See* U.S. IMMIGR. AND CUSTOMS ENF'T, BOND MGMT. HANDBOOK (Aug. 19, 2014), https://www.aila.org/File/Related/16051730f.pdf. [hereinafter "2014 Bond Handbook"]. This guidance includes dispositive circumstances that are not expressly delineated in the regulations or in Form I-352. *See, e.g., id*. at 9 (enumerating *discretionary* bond cancelation events).

19. For the most part, ICE maintains such guidance inaccessible to the public. Only after a 2016 FOIA request seeking records through October 2015, ICE released the 2014 Bond Handbook and other bond procedure memoranda. *See Stanford Law School's and UC Davis Law School's Immigration Clinics Uncover New Details About Federal Government's Immigration Detention System*, STANFORD UNIV., https://law.stanford.edu/immigrants-rights-clinic/stanford-and-u-c-davis-clinics-uncover-new-details-about-federal-governments-immigration-detention-

system/. [hereinafter "2016 FOIA Production"]. The 2016 FOIA Production also included extensive bond data, reports, and statistics kept by Defendants. *Id.*

20. Since the 2016 FOIA Production, significant changes have impacted the immigration bond arena, including two changes in presidential administrations and at least three updates to Form I-352, Immigration Bond.

21. Nevertheless, ICE has failed to make revisions, updates, and/or superseding bond memoranda publicly available. Additionally, ICE has largely failed to make its comprehensive data on bonds publicly available.

22. Critically, a staggering amount of funds from canceled bonds—that is, cases where all obligations have been met—go unclaimed. The U.S. Treasury account where Defendants deposit such unclaimed funds reached $237,658,766.27 as of December 31, 2021, dwarfing unclaimed money accounts held by every other federal agency. *Treasury Managed Accounts Report*, TREASURY DIRECT (Jan. 31, 2022), https://www.treasurydirect.gov/govt/reports/tma/unclaimed.htm.

23. As hundreds of millions of dollars in bond funds continue to go unclaimed, obligors, including Plaintiff EFF, are unable to access and review controlling policies and procedures used to make cancelation or breach determinations, notification thereof, and disbursement of canceled bond funds. They are also unable to access critical bond data and statistics kept by Defendants that would shed light on the reasons for the large sums of bond money unpaid by the Defendants as well as other systemic problems in bond the immigration bond context.

**II. DEFENDANTS HAVE FAILED TO TIMELY RESPOND TO PLAINTIFFS' EXPEDITED FOIA REQUEST FOR RECORDS REGARDING THE IMMIGRATION BOND SYSTEM**

24. On January 18, 2022, Plaintiffs emailed a FOIA request to ICE seeking information about Defendants policies and practices related to the use of bonds, including: (1) determinations of when and how bond is automatically canceled; (2) determinations of when and how bond is discretionarily canceled; (3) determinations of when and how a bond is considered breached; (4) when and how demand notices should be issued; (5) how obligors are and/or should be notified that an immigration bond has been canceled, forfeited, breached, and/or reinstated; and (6) how obligors are and/or should be notified that a canceled bond has gone unclaimed. Exh. A, FOIA Request at 2 [hereinafter "FOIA Request"].

25. Plaintiffs' FOIA Request also seeks records pertaining to bonds posted in fiscal years 2015 and 2016, specifically the numbers of total bonds; total delivery bonds; breached bonds; canceled bonds, aggregated by surety or cash and by claimed or unclaimed; and outstanding bonds, aggregated by pending proceedings, administratively closed proceedings, and closed proceedings. *Id*. at 2-3.

26. Plaintiffs requested expedited processing on three grounds. *Id*. at 4–5. First, Plaintiffs indicated there is "an urgency to inform the public about an actual or alleged federal government activity," and the request is made by entities that are "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). There is an urgency to inform the public because the cost of immigration bonds has increased considerably over the past few years; because ICE has yet to pay over 230 million dollars in canceled bonds; and because, by statute, ICE has a financial stake in breached funds. Exh. A, FOIA Request at 4.

27. Second, Plaintiffs requested expedited processing to prevent "[t]he loss of substantial due process rights." 6 C.F.R. § 5.5(e)(1)(iv). In order to pay bond for community members, Plaintiff EFF has taken out loans from financial partners; the bulk of which are due in 2022. Uncertainty over policies and procedures pertaining to immigration bond impairs the daily operations of EFF by diminishing its ability to seek repayment of canceled bonds, therein threatening its capacity to fulfill its financial obligations and its organizational goal of continuing to pay bond for those in need. Exh. A, FOIA Request at 4.

28. Third, Plaintiffs requested expedited processing because their request is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv); Exh. A, FOIA Request at 4.

29. Plaintiffs also sought a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), because both requestors are non-profit organizations and disclosure of the information is "likely to contribute significantly to public understanding of the operations or activities of the government." Exh. A, FOIA Request at 5–6.

30. In addition, Plaintiffs sought spreadsheets and documents containing data to be produced in native format and all other documents to be produced in searchable PDF format. *Id.* at 3.

31. On February 1, 2022, ICE acknowledged Plaintiffs' request, assigned it a tracking number, and invoked a ten business-day extension of the ordinary twenty business-day FOIA response period, pursuant to 5 U.S.C. § 552(a)(6)(B). Exh. B, ICE Acknowledgment.

32. Defendants were required to produce a response to Plaintiff's request on Wednesday, February 16, 2022, twenty business days after receipt of Plaintiff's emailed January

18, 2022, FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i) (requiring the agency to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify" requestor of such determination). Even with the ten-day extension, Defendants were statutorily required to produce a response by March 3, 2022.

33. However, Defendants failed to respond to Plaintiffs' request within the twenty days afforded under the FOIA statute, 5 U.S.C. § 552(a)(6)(A)(i), or the additional ten days provided for "unusual circumstance," 5 U.S.C. § 552(a)(6)(B); 28 C.F.R 16.5(c).

## CLAIM FOR RELIEF

### FIRST CAUSE OF ACTION

**Violation of FOIA, 5 U.S.C. § 552, for Failure to Disclose Responsive Records**

34. Plaintiffs repeat, allege, and incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1–33 above.

35. Defendants are obligated under 5 U.S.C. § 552(a)(3) to promptly produce records responsive to Plaintiffs' FOIA requests and supplement thereto.

36. Plaintiffs have a legal right to obtain such records, and no legal basis exists for Defendants' failure to disclose them.

37. Defendants' failure to disclose all responsive records violates 5 U.S.C. § 552(a)(3)(A), as well as the regulations promulgated thereunder.

## SECOND CAUSE OF ACTION

**Violation of FOIA, 5 U.S.C. § 552, for Failure to Respond within Time Required**

38. Plaintiffs repeat, allege, and incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1–37 above.

39. Defendants are obligated under 5 U.S.C. § 552(a)(6)(A)(i) to promptly produce records responsive to Plaintiffs' FOIA requests. Plaintiffs have a legal right to obtain such records, and no legal basis exists for Defendants' failure to disclose them.

40. Defendants' failure to disclose all responsive records violates, at a minimum, 5 U.S.C. § 552(a)(3)(A), as well as the regulations promulgated thereunder.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

a. Order Defendants to expeditiously conduct an adequate search for all records responsive to Plaintiffs FOIA requests in accordance with 5 U.S.C. § 552(a)(3)(C);

b. Declare that Defendants' failure to disclose the records responsive to Plaintiff's request violates FOIA, 5 U.S.C. § 552(a)(3)(A), as well as the regulations promulgated thereunder;

c. Declare that Defendants' failure to promptly produce records responsive to Plaintiffs' request violates 5 U.S.C. § 552(a)(6)(A)(i);

d. Order Defendants to expeditiously process and disclose all responsive, non-exempt records, in the requested format of production, and enjoin Defendants from improperly withholding records;

e. Award Plaintiffs reasonable attorneys' fees and other litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, and any other applicable statute or regulation; and

  f. Grant such other relief as the Court may deem just, equitable, and appropriate.

           Respectfully Submitted,

Dated: April 7, 2022       */s/ Mauricio E. Noroña*
              Mauricio E. Noroña, Esq.
              Peter L. Markowitz, Esq.
              Aaron Friedman, Student Intern*
              Mary Karapogosian, Student Intern*
              Calli Schmitt, Student Intern*
              KATHRYN O. GREENBERG IMMIGRATION JUSTICE CLINIC
              BENJAMIN N. CARDOZO SCHOOL OF LAW
              55 Fifth Avenue, 11th Floor
              New York, NY 10003
              (646) 592-6551
              Mauricio.Norona@yu.edu

              *Motion to Appear as Law Students Pending