# EXHIBIT A

# CARDOZO LAW

BENJAMIN N. CARDOZO SCHOOL OF LAW • YESHIVA UNIVERSITY

KATHRYN O. GREENBERG IMMIGRATION JUSTICE CLINIC

**Peter L. Markowitz,** *Co-Director*
*Professor of Law*

**Lindsay Nash,** *Co-Director*
*Clinical Associate Professor of Law*

**Mauricio E. Noroña**
*Clinical Teaching Fellow*

**Elizabeth Wu**
*Clinical Teaching Fellow*

(646) 592-6416
Fax  (212) 790-0256

January 18, 2022

**VIA ELECTRONIC MAIL**
Fernando Pineiro
Freedom of Information Act Officer
U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009
ICE-FOIA@dhs.gov

       Re: Freedom of Information Act ("FOIA") Request

Dear Mr. Pineiro,

The Kathryn O. Greenberg Immigration Justice Clinic at the Benjamin N. Cardozo School ("Clinic") and Envision Freedom Fund (formerly Brooklyn Community Bail Fund) ("EFF") (collectively, "Requesters") submit this letter as a request for records under the Freedom of Information Act ("FOIA), 5 U.S.C. § 552, *et seq*. Requesters ask that this request be expedited pursuant to 5 U.S.C. § 552(a)(6)(E), and a fee waiver be granted pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

**RECORDS REQUESTED**

Requesters seek the release of any and all records[1], prepared, received, transmitted, collected, and/or maintained by U.S. Immigration and Customs Enforcement ("ICE") from the list enumerated below which were generated on or after October 1, 2015, regarding policies, guidelines, or procedures relating to immigration bonds.

The above records include, specifically:

---

[1] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audiotapes, e-mails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, bills, contracts, technical specifications, training manuals, and studies.

1. **2014 Bond Management Handbook Changes & Details:**
    a. Any manuals, handbooks, supplements, updates, amendments to and/or any policies or guidance clarifying, supplementing, amending, or superseding any portion of the 2014 Bond Management Handbook, Document Number ERO 11301.1; Effective Date: 8/19/2014 ("2014 Bond Management Handbook").
    b. The "[d]etailed instructions for issuing a cancellation notice" referred to on page 10 of the 2014 Bond Management Handbook, attached as Ex. A.

2. **Bond Policies and Procedures Guidance**
    a. **Automatic Cancellation**: All memoranda, guidelines, worksheets, training materials, communications, or other records detailing how ICE determines when and how a bond is *automatically* considered canceled.
    b. **Discretionary Cancellation**: All memoranda, guidelines, worksheets, training materials, communications, or other records detailing how ICE determines when and how a bond should be *discretionarily* canceled.
    c. **Breach**: All memoranda, guidelines, worksheets, policies, training materials, communications, or other records detailing how ICE determines when and how a bond should be considered breached.
    d. **Dermand Notices**: All memoranda, guidelines, worksheets, policies, training materials, communications, or other records detailing how ICE determines when and how to issue a demand notice, Form I-340.
    e. **Breach and Cancellation Notice Requirements**: All memoranda, guidelines, worksheets, policies, training materials, communications, or other records detailing how ICE should and/or does notify bond obligors that an immigration bond has been canceled, forfeited, breached, and/or reinstated.
    f. **Unclaimed Bond Notice Requirements:** All memoranda, guidelines, worksheets, policies, training materials, communications, or other records detailing how ICE should and/or does notify bond obligors that a canceled bond has gone unclaimed.

3. **Bond Data**: Any reports, documents, spreadsheets, databases files, or other records that contain the following information or contain data that would permit the following information to be calculated.

    For all bonds (whether set by ICE or the Executive Office for Immigration Review ("EOIR")) posted to ICE in fiscal years 2015 and 2016 (hereinafter "2015/2016 Bonds"):
    a. **Total Bonds**: The total number of 2015/2016 Bonds.
    b. **Total Delivery Bonds**: The total number of 2015/2016 Bonds which were delivery bonds (as defined on p.31 of the 2014 Bond Management Handbook) (hereinafter "2015/2016 Delivery Bonds").
    c. **Breached Bonds**: The total number of 2014/2015 Bonds for which ICE has issued a breach notice, Form I-323.

    d. **Cancelled Bonds**: The total number of 2015/2016 Bonds for which ICE has issued a cancellation notice, Form I-391 (hereinafter "Cancelled Bonds"), disaggregated by:
        i. **Surety vs. Cash**: Cancelled Bonds that were surety bonds versus cash bonds.
        ii. **Claimed vs. Unclaimed**: Cancelled Bonds that have been claimed versus those that remain unclaimed (including but not limited all such bonds moved to the U.S. Treasury Unclaimed Moneys Account.)
    e. **Outstanding Bonds**: The total number of 2015/2016 Delivery Bonds for which ICE has issued neither a cancellation or breach notice (hereinafter "Outstanding Bonds"), disaggreggated by the number of noncitizens released pursuant to such 2015/2016 Delivery Bonds where:
        i. **Proceedings Remain Pending**: Removal proceedings before EOIR remain pending.
        ii. **Proceedings Administratively Closed**: Removal proceedings before EOIR are administratively closed.
        iii. **Proceedings Closed:** Removal proceedings before EOIR are closed (other than adminstrative closure), further disagregated, to the greatest extent data permits, to show the following type of closures, including for example:
            1. Termination with prejudice
            2. Termination without prejudice
            3. Grant of relief resulting in permanent residence
            4. Grant of relief (other than voluntary departure) resulting in something other than permanent residence
            5. Voluntary departure.

**Format of Production**: Please provide all spreadsheets and documents containing data in native format with all metadata intact. Please provide all other documents in searchable PDF format. To the extent that documents containing data are converted from native format (for example Excel) into a PDF, which is contrary to the requested format, please ensure that hidden rows and columns within any spreadsheet or data document are exposed prior to converting the native file to a PDF document. If any abbreviations or acronyms are used in the data, please provide a record that defines the abbreviations and acronyms. Please provide each document as a single file with all documents consecutively Bate stamped. All parent-child relationships – for example, emails and attachments – should be maintained and produced such that they are identifiable in the production by inclusion in the same PDF. No affirmative steps should be taken to separate a parent and its corresponding children.

**Additional Search Requests:** Please construe this request, including the data requests in section 3, "Bond Data", as an ongoing FOIA request, so that any records that come within the possession of the agency prior to your final response to this FOIA Request should also be considered within the Request's scope.

If you believe that you do not have or cannot provide any portion of the requested records, please provide the remainder of the requested records. Requesters consent to the redaction of the names and personally identifying information of the people who are the subject of the proceedings being prosecuted by the Department of Homeland Security ("DHS").

This request is specific and narrowly tailored. However, if you believe that this information will be burdensome to produce as requested, please contact Requesters using the contact information below, as we may be willing to modify aspects of this request.

**EXPEDITED PROCESSING**

This request meets *three* independent criteria for expedited processing under the DHS regulations.

First, expedited processing is warranted because there is "an urgency to inform the public about an actual or alleged federal government activity," and the request is made by entities that are "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II).

This request demonstrates that both criteria are satisfied. There is an urgent need to inform the public about ICE's practices with respect to immigration bond cancellation and breaches. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Both ICE and the immigration courts rely heavily on bonds as a condition of release, yet the public knows little about ICE policies relating to immigration bonds. This is especially critical for at least three reasons. First, the cost of immigration bond has increased considerably over the past few years, forcing many individuals to assume substantial debt to pay it.[2] Second, ICE has yet to pay over $230 million dollars back to immigrants on bonds that the agency has already deemed to be canceled.[3] Third, by statute, ICE has a financial stake in breached funds.[4]

In addition, the Requesters—both entities with the capacity, intent, and demonstrated ability to disseminate the requested information to a broad cross-section of the public—are "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). EFF works alongside BIPOC, immigrant, and LGBTQ communities to free people through innovative campaigns, adovacy, and public education. EFF publishes free resources on its website.[5] EFF has also published reports as part of its Court Watch NYC collaboration, including *Breaking Down the New York City Punishment Machine*; *Same Game, Different Rules: Lessons From the First 100 Days of New York's Bail Reform; A People's Guide to Abolition: A Collaborative & Working Abolitionist Resource Document*, among others.[6] The Clinic, for its part, has a long track-record

---

[2] *See* Sarah Betancourt, *Immigrants pay cripplingly high bail bonds to be released from detention across US*, THE GUARDIAN (Aug. 25, 2021), https://www.theguardian.com/us-news/2021/aug/25/immigrants-pay-high-bonds-released-detention-us.

[3] TREASURY DIRECT, Treasury Managed Accounts Reports: Unclaimed Moneys (Jun. 30, 2021), https://treasurydirect.gov/govt/reports/tma/unclaimed.htm.

[4] Under 8 U.S.C. § 1356(r)(2), breached funds in excess of $8 million are, in part, used to cover expenses associated with the detention of undocumented noncitizens. 8 U.S.C. § 1356(r)(3)(ii).

[5] EFF, *Immigration Court Information*, https://envisionfreedom.org/get-support/#court (last visited Dec. 15, 2021).

[6] Court Watch NYC, *Court Watch NYC Reports and Resources,* https://www.courtwatchnyc.org/reports (last visited Dec. 15, 2021).

of obtaining and analyzing data from government agencies and publishing studies and evaluations to educate the public about the way that the U.S. immigration enforcement and adjudication systems function.[7] It disseminates these materials by publishing them on websites, circulating them on listservs, and sharing them with the media.[8] As such, Requesters have a proven track-record of compiling and disseminating information obtained via FOIA, and they will do the same with newsworthy information obtained through this request.

Second, Requestor EFF seeks an expedited records production to "[t]he loss of substantial due process rights". 6 C.F.R. § 5.5(e)(1)(iv).  Founded in 2015 as the Brooklyn Community Bail Fund, EFF has been at the forefront of the fight to end money bail and pretrial detention. Initially paying bail just in Brooklyn, they expanded to serve individuals across New York City, becoming the largest community bail fund in the country. In less than five years they freed nearly 5,000 people from jail, sparing them from the devastating consequences of pretrial detention and reuniting them with their families and communities so they could fight their cases from a position of freedom.  Since 2018, EFF has spent over five million dollars to free nearly 600 immigrant neighbors. In order to pay bond for community members, EFF has taken out loans from financial partners; the bulk of which are due in 2022. Uncertainty over policies and procedures pertaining to immigration bond impairs the daily operations of EFF by diminishing its ability to seek repayment of cancelled bonds, therein threatening their capacity to fulfill their financial obligations and its organizational goal of continuing to pay bond for those in need.

Third, expedited processing is also warranted because this is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv).

Concerns about the astronomical figures ICE has yet to pay back on canceled bonds—an amount that far surpasses the uncollected funds for every other government agency, except for the U.S. Judiciary—as well ICE's financial stake in breached funds undeniably impact public confidence in the integrity and sufficiency of ICE's bond practices. Disclosure of the requested information can assuage public fears or demonstrate that remedial action is warranted.

**FEE WAIVER**

Requesters ask that all fees associated with this FOIA request be waived.  Requesters are entitled to a waiver of all costs because, as described above, disclosure of the information is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii);

---

[7] *See, e.g.*, New York Immigrant Representation Study Steering Committee (including Lindsay Nash), *Accessing Justice: The Availability and Adequacy of Counsel in Removal Proceedings – New York Immigrant Representation Study Report: Part 1*, 33 CARDOZO L. REV. 358 (2011) (analyzing and reporting on ICE and EOIR data regarding the rates of representation and success in various EOIR proceedings for noncitizens facing removal in the New York area); PETER L. MARKOWITZ, *ET AL.*, CARDOZO IMMIGRATION JUSTICE CLINIC, CONSTITUTION ON ICE (2009), *available at* http://www.cardozo.yu.edu/uploadedFiles/Cardozo/Profiles/immigrationlaw-741/IJC_ICEHome-Raid-Report%20Updated.pdf (reporting on documents released by the DHS in response to FOIA request regarding home raids).
[8] *Id*.

*see also* 6 C.F.R. § 5.11(k) (records furnished without charge or at a reduced rate if the information is in the public interest, and disclosure is not in commercial interest of institution).

Requesters are both non-profit organizations that have undertaken this work in the public interest and not for private commercial interest. Requesters will make any newsworthy information publicly available, and such information will be critical to inform the public about the agency's practices with respect to immigration bonds. Accordingly, disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress' legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1310, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial requestors.'") (internal citation omitted).

In the alternative, if a full fee waiver is not granted, Requesters seek all applicable reductions in fees pursuant to 6 C.F.R. § 5.11(d). Further, fees are limited to only reasonable duplication costs when the request is not for commercial purposes and "the request is made by an educational or noncommercial scientific institution." 5 U.S.C. § 522(a)(4)(A)(ii)(II). Since the Clinic is part of an educational institution, it requests that if the fee waiver is not granted, fees be limited to duplication costs only. Requesters further ask that, if no fee waiver is granted and the fees exceed $200.00, the agency please contact undersigned counsel to obtain consent to incur additional fees.

## **CERTIFICATION**

I certify that the foregoing is true and correct. See 6 C.F.R. § 5.5(e)(3). If you have any questions regarding this request, please contact the undersigned counsel at (646) 592-6538, or via email at mauricio.norona@yu.edu. Thank you in advance for your timely cooperation.

Please furnish copies of all information to

        Peter L. Markowitz
        Benjamin N. Cardozo School of Law
        Kathryn O. Greenberg Immigration Justice Clinic
        55 Fifth Avenue, Rm. 1111
        New York, NY 10003

        Sincerely,

        */s/ Mauricio Norona*

        Mauricio E. Noroña, Esq.
        Peter L. Markowitz, Esq.
        Leandro Gomes, Student Intern
        Aaron Friedman, Student Intern
        Benjamin N. Cardozo School of Law
        Kathryn O. Greenberg Immigration Justice Clinic
        55th Fifth Avenue, 11th Floor

New York, NY 10003
Tel: (646) 592-6551
Fax: (212) 790-0256
mauricio.norona@yu.edu


**/s/ Carl Hamad Lipscombe**
Carl Hamad-Lipscombe
Envision Freedom Fund
195 Montague Street
Brooklyn, NY 11201
Tel: (718) 715-8610
clipscombe@envisionfreedom.org

# EXHIBIT A

Upon cancelation, submit Form I-391, *Notice Immigration Bond,* to FINOPS-BURLINGTON using EARM or manual back up procedures (refer to eBONDS participants handbook). Submit Form I-391 within 60 days of the event that warranted the action. Place a copy of Form I-391 in the alien's A-File.

When cash bonds are canceled, the Field Office sends Form I-391 and Form I-352A by regular mail to the obligor. The Field Office also notifies the obligor to forward the original Form I-305 (issued when the bond was posted) to the FINOPS-BURLINGTON. The cash deposit cannot be refunded until FINOPS-BURLINGTON receives Form I-305. If the obligor loses Form I-305, the obligor submits notarized **Form I-395**, *Affidavit in Lieu of Lost Receipt*. The Obligor sends the original, notarized Form I-395 to FINOPS-BURLINGTON so that the cash deposit can be refunded.

Because surety companies do not deposit cash to secure bonds, the cancelation process for surety bonds is simpler. The Field Office need only send Form I-391 by regular mail to the company and agent, submit Form I-391, *Notice Immigration Bond,* to FINOPS-BURLINGTON using EARM or manual back up procedures (refer to eBONDS participants handbook), and place a copy of Form I-391 in the alien's A-File.

Detailed instructions for issuing a cancelation notice (**Form I-391**) can be found at (b)(7)(E)

### D.  Demand Notices (Form I-340, *Notice to Obligor to Deliver Alien*)

Demand notices are issued by using **Form I-340**, *Notice to Obligor to Deliver Alien*. Under the current version of the bond form, demand notices are issued only for delivery bonds

To properly issue a demand notice, determine:

- Whether the demand notice needs to be sent to more than one obligor;
- The last-known address of the obligor(s);
- An appropriate date to use as the surrender date;
- The proper purpose for issuing the demand notice; and
- Whether a "Questionnaire and Worksheet" (Form I-340A) needs to be sent with the demand notice

Detailed instructions on completing and sending demand notices can be found in Appendix 13.

After completing a demand notice, Form I-340, print a copy of the electronic version and place the hard copy in the alien's A-file.